In the Matter of FRESH ENTERPRISES, INC., Debtor.

GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,

v.

FRESH ENTERPRISES, INC. and John Washburn, Defendants.

Bankruptcy No. 79–1651.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

June 12, 1981.

John A. Noland, Henderson, Franklin, Starnes & Holt, Fort Myers, Fla., for plaintiff.

Jerry Markowitz, Miami, Fla., for defendant, Fresh Enterprises, Inc.

Wm. H. Shields, Fort Myers, Fla., for defendant, John Washburn, Trustee.

John Washburn, Ft. Myers, Fla., Trustee.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER in controversy is the conflicting claims to a check in the amount of $2,569.67 by John Washburn, the Trustee of the estate and by General Motors Acceptance Corporation (GMAC). It is the contention of GMAC, the Plaintiff who instituted this adversary proceeding, that by virtue of certain provisions of a lease agreement, it is entitled to the check.

Both the Plaintiff and the Defendant agree that there are no factual matters in dispute and the matters can be resolved as a matter of law by construing the relevant portion of the lease. The facts as they appear from the record can be summarized as follows:

GMAC is the financing arm of General Motors and primarily transacts business through local General Motors dealers. The Defendant, John Washburn, is a duly appointed trustee for the estate of Fresh Enterprises, Inc. (the Debtor), the corporation currently involved in a liquidation proceeding under Chapter 7 of the Bankruptcy Code. On May 1, 1979, Fresh Enterprises leased a 1979 Ford Thunderbird, Serial No. 9GH239563 from Bill Branch Leasing, Inc., a leasing company located in Ft. Myers, Florida. The motor vehicle was titled to Bill Branch Leasing, Inc. It is not clear from the title certificate whether GMAC was merely a lienholder or a co-owner of the vehicle. The lease under consideration in this controversy, provides inter alia in ¶ 24 that the lessee shall maintain during the lease at its sole expense, an insurance policy on the vehicle providing insurance in the amount of $100,000 for any one person for personal injury or death; $300,000 for any one accident for personal injury or death; $25,000 for property damage if the leased vehicle is an automobile; or $50,000 for property damage if the leased vehicle is a truck, and uninsured motorist coverage. This clause also provides that the coverage shall cover the lessor as an additional insured. The clause further provides that the lessee shall at all times keep the vehicle insured against all loss, damage or destruction due to fire, theft or physical damage.

The very next clause, ¶ 25, is entitled "Maintenance and Repairs." It provides that the lessee shall pay for all maintenance and repairs to keep the vehicle in good working order and condition and shall return the vehicle in good condition, reasonable wear and tear excepted upon completion of the lease. It is without dispute that the lease was assigned to GMAC and that the vehicle was damaged while it was in the possession and custody and control of the Debtor. It further appears that in compliance with the insurance requirements of the lease, the lessee acquired an insurance policy from Crum and Forster Insurance Company. It further appears that Fresh Enterprises made a claim for the loss and that the insurance company issued its check in the amount of $2,569.67 in satisfaction of the claim, which check is the subject of this controversy.

According to the Plaintiff, the check is in the possession of the trustee who refuses to turn it over to GMAC after demand has been made. The trustee admits that he has a check, but contends, however, that the vehicle has been repaired; that the repairman has been paid and since the trustee paid for the repairs pursuant to the terms of the lease, he is entitled to the proceeds of the check, especially since GMAC obtained possession of the vehicle in repaired condition, did not pay for the repairs.

Neither the Plaintiff nor the Defendant furnished any authority which would be of assistance to resolve this controversy. The lease under consideration is what is commonly referred to as a "boiler plate contract" and no doubt was prepared by the lessor. It is a well-recognized rule of construction that a language in a contract should be interpreted more strongly against a party who has selected the language and ambiguous language will be construed against the party responsible for drafting the contract where another construction would produce an unjust result or defeat the purpose of the contract. *Bouden v. Walker*, 266 So.2d 353 (Fla.2d DCA 1972); 11 *Fla.Jur.*, 2d *Contracts*, § 1106 at 400; 17 *Am.Jur.*, 2d *Contracts*, § 276 at 689. There is no question that ¶ 24, the insurance clause, and ¶ 25, the maintenance and repair clause when read together are ambiguous. On the one hand, ¶ 24 seems to intimate that the requirement of the lease that the lessee maintains insurance and the insurance contract shall include a standard loss clause that all payments by the insurance company for any loss would be paid to the lessor. On the other hand, the maintenance and repair clause indicates that all repairs

**250**

to the vehicle leased shall be borne by the lessee. This, of course, creates an anomalous situation because in case of damage to the vehicle, the lessee has to bear the cost of repairs, yet would not have the benefit of the insurance settlement made for a claim for the very same damage. This is clearly inequitable and unfair.

While the first insurance clause speaks about property damage, the fair reading of this clause leaves no doubt that this term refers to property damage done by the vehicle and not damage suffered by the vehicle. This is clear since the damage clause has a coverage of $25,000 if it is an automobile and $50,000 if the vehicle is a truck, and of course, a 1979 Thunderbird is certainly not worth $25,000. However, the insurance clause also requires the lessee to maintain the insurance on the vehicle against all *damage* (emphasis supplied) or destruction due to theft, fire, or physical damage. This clause also requires to contain a standard loss payable clause under which payment shall be payable in case of loss to the lessor and the lessor would be entitled only to payment if there was a total loss of the leased vehicle and not for payment for damage to the leased vehicle. This clause does not mention any damage and the limits of the application of a loss payable clause in the event the vehicle is lost. When this provision is read in conjunction with the maintenance and repair clause, it is logical to infer that the parties intended that all insurance claims for physical damage will be paid to the lessee since under the contract it is the lessees obligation to pay for the repairs.

In light of the foregoing, this Court is satisfied that a fair reading of the lease agreement permits no other conclusion that's the trustee is entitled to the benefits of the insurance check and GMAC has nothing more than a possible general unsecured claim if the vehicle, when returned, was not returned in good condition, reasonable wear and tear excepted.

A separate final judgment will be entered in accordance with the foregoing.